SHIVERS, Judge.
This is an appeal of the deputy commissioner’s order in a workers’ compensation case. We affirm in part, reverse and remand.
The claimant in this case sustained a compensable low-back injury while working as a maid for the self-insured employer. For approximately one year after the injury, claimant was treated by an authorized orthopedic surgeon, Dr. Mensch. Mensch released claimant to return to work on four separate occasions. On each occasion, she returned to work for a few weeks, became unable to work, and went back to Dr. Mensch. Her last date of employment was on May 14, 1984. After that, she was treated by Mensch until August 10, 1984, on which date he told claimant he had “nothing to offer” her and that she could return to light duty work. A letter to that effect was sent to the employer, in which Mensch also stated that claimant had no disability and that since her symptoms were subjective, she would have to determine for herself when she had reached MMI. “To give her the benefit of the doubt,” however, Mensch opined that she would reach MMI by September 1, 1984. According to the claimant, Mensch recommended that she be treated at Baptist Hospital Pain Clinic.
After her last appointment with Dr. Mensch, claimant still desired treatment. Thus, on the recommendation of a friend, she went to Dr. Levin, an osteopathic physician. Although claimant told Levin that her injury had occurred at work, no request for authorization was made and no medical bills or reports were filed at that time. Levin’s medical bills were, however, later sent to the employer’s attorney pursuant to a November 16, 1985 subpoena.
On October 1, 1984, the first claim was filed, requesting temporary total disability (TTD) or temporary partial disability (TPD) benefits from September 1,1984, wage-loss benefits after date of maximum medical improvement, and “authorization for claimant to continue to be seen by Dr. William Levin.” By the date of the first claim, claimant had already been treated by Dr. Levin on four occasions. She was treated four more times after the claim was filed. A second claim, submitted on January 8, 1985, requested the same benefits as the first, but added a request for admission to the Baptist Hospital Pain Clinic and amended the request regarding Dr. Levin to read “authorization for the claimant to continue to be seen by Dr. William Levin, an osteopath, or alternate osteopathic care.”
Ms. Caldera, Claims Manager for the self-insured employer, testified that she received the October 1, 1984 claim, but did not authorize Dr. Levin because two orthopedic surgeons were already authorized and she felt a third would be unnecessary. By the time Ms. Caldera received the first claim she had already received Dr. Mensch’s letter stating that he had nothing further to offer the claimant. Caldera stated she was not aware that Levin was an osteopathic physician until some time after she received the first claim.
*129 Caldera stated that she received the second claim on January 9, 1985, but did not look at it until February 19, 1985. At that point, Caldera already had notice that the claim for authorization for the pain clinic by way of a December 19, 1984 letter from the claimant’s attorney and a December 10, 1984 report from Dr. Mensch. She stated she denied authorization for the pain clinic because she felt that Dr. Mensch wanted to send claimant there merely to “get her out of [his] hair.” As of the date of Caldera’s deposition, February 19, 1984, neither the pain clinic nor any osteopathic care had been authorized.
After a hearing on the matter, the deputy commissioner entered an order granting TTD from September 1, 1984 and continuing, authorization for treatment at the Baptist Hospital Pain Clinic, payment of all of Dr. Levin’s past medical bills as well as continuing authorization for Dr. Levin, costs, and statutory interest. Jurisdiction was reserved for determination of attorney’s fees. As factual basis for the retroactive authorization of Dr. Levin, the DC found that the servicing agent was acquainted with claimant’s “desire to be treated by Dr. Levin or another osteopathic physician” but had completely disregarded her request by failing to either provide alternate care or seek the DC’s determination that a change in medical attention would not be in claimant's best interests. Further, the DC found there to be no evidence that the employer was in any way prejudiced by Dr. Levin’s failure to timely submit his medical bills and reports and, therefore, excused the untimely filing for good cause. The employer now appeals, arguing that the DC erred in ordering payment of Dr. Levin’s bills and TTD benefits and in awarding costs, interest, and attorney’s fees.
First, we agree that the DC erred in ordering payment of Dr. Levin’s bills for the four treatments claimant received prior to submitting her first, October 1, 1984, claim. Although Dr. Mensch’s statement to claimant that he had nothing further to offer her effectively left her without authorized medical care after August 10, 1984, claimant should have sought authorization for Dr. Levin or another osteopathic physician before beginning treatment. Instead, she went to Levin on August 28, 1984, and was treated by him four times prior to filing her first claim. Since there is no evidence that claimant went to Levin on an emergency basis and since there is no evidence that the employer had any knowledge that she was being treated by him prior to the first claim, retroactive authorization for the first four visits to Dr. Levin is reversed. However, we would affirm the DC’s retroactive authorization of the four visits to Levin which occurred after submission of the first claim. The employer argues that the first claim appeared to be a request for an additional physician, and that the employer had no knowledge that claimant was requesting either alternative care or osteopathic treatment until it received the January 1985 claim. We find this argument to be without merit. By the time the employer received the October 1, 1984 claim, it had already received Dr. Mensch’s letter stating he had nothing further to offer the claimant. Since the employer had knowledge that Dr. Mensch was either unable or unwilling to provide care, yet it failed to authorize alternative care, the claimant was justified in seeking treatment from Levin. Sears, Roebuck and Company v. Viera, 440 So.2d 49 (Fla. 1st DCA 1983). Further, we agree with the deputy’s finding of good cause to excuse Levin’s failure to submit medical bills and reports in a timely fashion.
Second, we find the record to contain competent substantial evidence to support the award of TTD benefits. It was within the deputy commissioner’s discretion to choose Dr. Levin’s and claimant’s testimony over that of Dr. Mensch and there is no indication that he failed to consider Mensch’s testimony. To the contrary, the order states that the deputy commissioner considered the testimony of all witnesses and exhibits and resolved the conflicts in the testimony.
*130 Third, and last, we remand for the deputy commissioner to specify the basis for his award of interest as well as the amount to be paid.
Accordingly, the order is AFFIRMED in part, REVERSED, and REMANDED.
JOANOS and NIMMONS, JJ., concur.